**Dennis H. OSLUND, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 4–88–323.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 23, 1989.

See also, D.C., 701 F.Supp. 710.

Roderick J. MacPherson, III, Minneapolis, Minn., for plaintiff.

Robert M. Small, Minneapolis, Minn., for defendant.

BERNARD P. BECKER, United States Magistrate.

This matter came on for hearing before the undersigned United States Magistrate on plaintiff's motions:

1) To require the Custodian of Records at Ramsey County Medical Center to produce all medical records and billing records concerning Caryn Crimmel for the period between January 1, 1980—September 1, 1980, subject to whatever protective order the Court deems necessary; and

2) For disclosure of the names of participants in a 1980 "rap" group at the Veterans Administration Hospital, Minneapolis, Minnesota.

I. FACTS

Plaintiff brought a negligence and medical malpractice claim under the Federal Tort Claims Act, 28 U.S.C. § 2671. Plaintiff alleges that during the course of therapy treatment at the Veterans Administration Hospital (VA), he was sexually involved with Ms. Crimmel, an occupational therapy intern. Plaintiff argues that because Ms. Crimmel was part of plaintiff's treatment team, Ms. Crimmel was functioning within the scope of her employment duties and the VA is liable for negligent supervision. As a result, plaintiff is seeking damages, claiming he suffers emotional distress and aggravation of post-traumatic stress disorder.

The fact that a relationship existed is not in dispute. During the course of this relationship, herpes was transmitted from one partner to another. Ms. Crimmel sought medical treatment for herpes at Ramsey County Medical Center. Plaintiff has petitioned the Court to subpoena the medical records of Ms. Crimmel (an unnamed defendant in this action) for the period between January 1, 1980—September 1, 1980 from the Ramsey County Medical Center to determine the source of the herpes and the starting date of the meretricious relationship. Plaintiff expects that her medical records will reveal the source of the herpes and when she contracted the disease. Plaintiff contends that the medical records may reveal that Ms. Crimmel had meretri-

cious relations with other members of the rap group. Ms. Crimmel has agreed to limited disclosure of her medical records by allowing the release of the dates of treatment and the diagnosis.

In addition, plaintiff seeks a list of names and addresses of the people who participated in the VA "rap" group between January 1, 1980—October 1, 1980 on the theory that these other participants could support his allegations of a continuing relationship with Ms. Crimmel. Plaintiff has independently secured the names of two persons who participated in the "rap" group who might be willing to testify.

## II. DISCUSSION

The two issues before the Court are: 1) whether medical records are privileged and therefore not discoverable under Fed.R. Civ.P. § 26(b)(1); and 2) whether a list of participants of a "rap" group is confidential and likewise not discoverable.

The U.S. Constitution provides protection for "a well established 'zone of privacy,' [including] one's sexual relations." *County of Ramsey v. S.M.F.*, 298 N.W.2d 40, 42 (Minn.1980); *Fults v. Superior Court*, 88 Cal.App.3d 899, 904, 152 Cal.Rptr. 210, 213 (1979), citing *inter alia*, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). In *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976), the Minnesota Supreme Court recognized this "zone of privacy" by holding that "an intrusion into the right of privacy can only be justified by a legitimate and important state interest, and even then the intrusion must be by the least intrusive means." *County of Ramsey v. S.M.F.*, *supra*; *Price v. Sheppard*, 307 Minn. at 257–58, 239 N.W.2d at 910–11 (1976).

In the present case, Ms. Crimmel has asserted her right of privilege with regard to her medical records. Whether these records are privileged and if so, whether they are discoverable, will depend on whether federal or state law governs.

Since this claim is brought under the Federal Tort Claims Act, Federal Rule of Evidence 501 applies. *Whitman By Whitman v. United States*, 108 F.R.D. 5, 6 (D.N.H. 1985). The second sentence of Rule 501 states that

> In civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Rule 501. Fed.R.Evid. But for the Federal Tort Claims Act, as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, §§ 1–9, 102 Stat. 4563, 4564–67 (codified as amended at 28 U.S.C. § 2671, et seq.), this case would not exist in its present posture. Ms. Crimmel would have been named as a defendant. The case would have been brought in state court and state law would apply directly. Instead, the amended Federal Tort Claims Act precludes Ms. Crimmel from being named as a party. Under 28 U.S.C. § 2679(d), provided Ms. Crimmel was acting within the scope of her employment, "the United States shall be substituted as the party defendant." Were it not for this amended Federal Tort Claims Act, Ms. Crimmel would have become a party, making her more than a non-party. She is, in fact, an unnamed defendant. Once substituted, under 28 U.S.C. § 2674,

> [T]he United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

■ Even though the Federal Rules of Evidence do not recognize a general physician-patient privilege, *Lora v. Board of Ed. of City of New York*, 74 F.R.D. 565, 575 (E.D.N.Y.1977), Minn.Stat. § 595.02(1)(d) applies since this is a civil action and the question of privilege is a material element of the defense. This analysis is consistent

with the Committee Notes of the Rule which indicates that

> In civil actions and proceedings, where the rule of decision as to a claim or defense or as to an element of a claim or defense is supplied by state law, the House provision requires that state privilege law apply.

Rule 501, Fed.R.Evid. The Notes go on to say that

> Federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason. The Committee believes that in civil cases in the federal courts where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy.

*Id.* It is likewise consistent with 28 U.S.C. § 2674 which states:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances ...

Case law under the Federal Tort Claims Act also supports the argument for applying state law. The court in *Schuler v. United States*, 113 F.R.D. 518, 520 (W.D. Mich.1986) determined that since "federal procedure in this instance lack[ed] any provisions with respect to privileges, ... the Court [was] directed to apply the state law of privileges." In *Welsh v. United States*, 844 F.2d 1239, 1243 (6th Cir.1988) the court held that "[l]iability under the Federal Tort Claims Act is determined according to the substantive law of the state in which the alleged negligence occurred," citing *Rayonier, Inc. v. United States*, 352 U.S. 315, 318–20, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957). The court in *Huzjak v. United States*, 118 F.R.D. 61 (N.D.Ohio 1987) held that "[u]nder the Federal Tort Claims Act, the controlling law is that of the place where the acts giving rise to the cause of action occurred." 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Using the doctrine of respondeat superior, Congress intended to limit the liability of government

"to third persons for acts of its employees only as and to the same extent that a person in private employment would be liable under the law of the state where the [injury] occurred." *United States v. Campbell*, 172 F.2d 500, 503 (5th Cir.1949).

■ Applying state law to the present case, Minn.Stat. § 595.02(1)(d) recognizes the right of privilege in a doctor/patient relationship. A licensed physician is not allowed to disclose any information which was acquired in attending the patient without the patient's consent. Privilege is the exclusive right of the patient. It cannot be waived or invoked by another, and a patient, if not before the court, must be given the opportunity to claim the right of privilege before examination proceeds. *Wigmore on Evidence*, § 2386, p. 851. "On the privileged person's behalf, the court is to be left to accord the protection if the claim is a proper one." *Wigmore on Evidence*, § 2196, p. 112.

*In re David Stuart Fink, M.D.*, 876 F.2d 84 (11th Cir.1989), the court held that state law governs the privileged nature of materials sought in discovery. In recognizing that Florida courts have consistently refused to permit discovery of medical records of non-parties to an action, the court stated that "[t]he production of this type of information is disfavored due to the expectation of privacy inherent in the doctor-patient and other confidential relationships." *Id.* at 85. This sense of expectation was also identified by the court in *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101 (S.D.Ohio 1982), where the court recognized

> The need to be sensitive to the potential burden imposed on a non-party during discovery and proposed a balancing test in which the need for the material is weighed against the burden (financial or otherwise) to be imposed, the possibility of lightening it through a protective order, the financial resources of the non-party, and the non-party's interest (if any) in the final outcome of litigation.

*Id.* at 150. Further arguing the need to restrict the scope of discovery, the court in *Dart Industries Co., Inc. v. Westwood*

*Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980), stated:

> While discovery is a valuable right and should not be unnecessarily restricted, *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 232 (9th Cir.1979), the "necessary" restriction may be broader when a non-party is the target of discovery. As one district court has noted "[t]here appears to be quite strong considerations indicating that ... discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents," *Collins and Aikman Corp. v. J.P. Stevens & Co., Inc.,* 51 F.R.D. 219, 221 (D.S.C.1971).

A balancing test was recognized by the court in *Lora v. Board of Ed. City of New York,* 74 F.R.D. 565, 576 (E.D.N.Y.1977). Claims of privacy and privilege are not absolute but "are qualified and must be balanced against legitimate and weighty competing private and state interests." The court balanced non-party's rights of privacy and privilege against a federal question of discrimination. It held that privacy had to yield but the invasion of privacy was minimal since the privileged information would be kept anonymous.

Rule 26(b)(1), Fed.R.Civ.P., permits parties broad discovery including information which may be inadmissible at trial provided it appears reasonably calculated to lead to discovery of admissible evidence. Recognizing that privilege is an exception to this rule, the court in *Huzjak v. United States,* 118 F.R.D. 61 (N.D.Ohio 1987) listed three possible outcomes:

> At one extreme, the privilege between a physician and patient is so important that, absent an actual waiver, there is no waiver until the plaintiff takes the stand to testify. At the other extreme, favoring full and open discovery, the plaintiff is deemed to have waived the privilege upon commencement of the lawsuit. A third view, falling between the extremes permits discovery of privileged material after the lawsuit is filed under a protec-

tive order which prohibits use of the material until the plaintiff, upon testifying at trial, actually waives the privilege. *Id.* at 64.

This Court finds that Ms. Crimmel's medical records are discoverable under a protective order. The government shall deliver to the undersigned Ms. Crimmel's medical records from Ramsey County Medical Center between January 1, 1980—September 1, 1980, to this Court for an *in camera* inspection. Plaintiff's attorney will submit a series of limited questions designed to address areas that provide the basis for the plaintiff's legal theory in this case.

■ The list of names sought by plaintiff is not discoverable. Defendant cites both the Privacy Act, 5 U.S.C. § 552a(b), in which disclosure of the names and addresses is only possible with the consent of the individual to whom the record pertains, and the Veterans Records Statute, 38 U.S.C. § 3301, in which the names and addresses of present and former members of the Armed Forces in the possession of the VA shall be confidential and privileged and no disclosure shall be made, except under court order, 38 U.S.C. § 3301(b)(2).

A release of names and addresses would be a breach of confidentiality and a violation of the two Acts. In *Fink, supra* at 85, the Florida court extended the prohibition on discovery to cases where discovery was sought only of the names and addresses of the non-party patients. The court dismissed an argument that discovery solely of names and addresses is different from discovery of medical records. The discovery of names would have similar effect as discovery of items of a medical record as it necessarily involves inquiry into medical care of other patients. The court in *Detroit Edison Co. v. National Labor Relations Board,* 440 U.S. 301, 317, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979) applied a balancing test and found that

> the Union's need for information was not sufficiently weighty to require breach of the promise of confidentiality to the examinees, breach of its industrial psychologists' code of professional ethics and

potential embarrassment and harassment of at least some of the examinees.

The facts of the present case indicate that the "rap" group took place almost ten years ago, that the participants had an expectation that their participation in and disclosures to the group would remain confidential. There is a strong likelihood that the participants would be burdened, harassed and/or embarrassed by having to re-examine events which occurred nearly a decade ago.

Because plaintiff has not cited any law to support his position and based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY ORDERED that the plaintiff's motion for a court order to subpoena the medical records between January 1, 1980—September 1, 1980, of Ms. Crimmel from the Ramsey County Medical Center is GRANTED under the terms of the protective order detailed above.

IT IS FURTHER ORDERED that the plaintiff's motion for a court order to subpoena the names and addresses of participants in the VA "rap" group between January 2, 1980—October 1, 1980, is DENIED.