634 So.2d 305 (1994)
Willie B. NEWMAN, M.D., and Willie B. Newman, M.D., P.A., Petitioners,
v.
Bernadette AMENTE and Solomon Amente, etc., Respondents.
No. 93-2625.
District Court of Appeal of Florida, Fifth District.
March 31, 1994.
*306 Jennings L. Hurt, III, Randall M. Bolinger and Michael V. Hammond of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando for petitioners.
H. Scott Bates of Morgan, Colling & Gilbert, P.A., Orlando, for respondents.
THOMPSON, Judge.
Dr. Willie B. Newman and his professional association petition this court for a writ of certiorari to review the trial court's order allowing Bernadette and Soloman Amente, parents and legal guardians of a minor child, to discover certain medical records belonging to Dr. Newman's other patients. We grant the writ.
Dr. Newman treated Mrs. Amente during the prenatal period and the delivery of the minor child. Because the mother weighed over 300 pounds, Dr. Newman termed her pregnancy high-risk. The parents allege that the doctor was negligent in the treatment of the minor child. The parents contend that as a result of his negligence, the child is now afflicted with Erb's palsy, a brachial plexus injury. At issue is Dr. Newman's obstetrical care and treatment in connection with the childbirth.
During discovery, the Amentes sought production of the complete medical records for all of Dr. Newman's "markedly obese" obstetric patients giving birth between 1 January 1989 and 31 December 1990. The Amentes' request specifically contemplated "redaction of all patient identifying information from the reports prior to production." The trial court's order granted the Amentes' request for production of the patients' files with their identifying information redacted from the file and further provided that they reimburse Dr. Newman "for the cost of retrieval of the records and redaction of patient identification data."
Dr. Newman raises three issues in his petition as reasons why the discovery order should be quashed: 1) the retrieval of the records would be too burdensome for Dr. Newman and his staff because it would take several days and they would have to go through a minimum of 500 patient files; 2) the records are not indexed in the form requested by the Amentes and Dr. Newman would be forced to create records that do not now exist; and finally, 3) the confidentiality of the patient and physician would be invaded by the production of information that is not relevant to this lawsuit.
The review of the records would not be too burdensome. The request covers a relatively small period of time, from 1 January 1989 to 31 December 1990, and the Amentes have been required to reimburse Dr. Newman for any additional costs he incurs to produce these records. McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991) (the party required to produce records sought during discovery can produce bill or advise the requesting party on the cost of *307 production). Also, the records that actually are to be produced and photocopied are women who are "overly obese." Dr. Newman admitted during deposition that there would be a small number of women in this category. Courts have held requests to be unduly burdensome when the number of files to be reviewed is extremely large. North Miami Gen. Hosp. v. Royal Palm Beach Colony, Inc., 397 So.2d 1033 (Fla. 3d DCA 1981) (over 37,000 admission files found to be overly burdensome); Argonaut Ins. Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA), cert. denied, 364 So.2d 889 (Fla. 1978) (records over an 11 year period overly burdensome). This case does not approach the level or volume of files to be classified as overly burdensome.
The next argument, likewise, has no merit. Dr. Newman argues that the information requested would have to be "created" because the information is not indexed in the form requested by the Amentes.[1] This argument is not correct. The information does exist and is in each of the patients' files, i.e., the weight of the mother, but the information would have to be retrieved and reviewed manually. The task is more onerous because it must be done manually, but it can be done.
The final issue involves the confidentiality of patients' records who are not parties to this lawsuit and the relevance of the information sought from these patients' confidential medical files. The patient files of Bernadette Amente are subject to inspection by the plaintiff and the defendant in this case. By bringing the lawsuit, Bernadette waives the confidentiality of her medical file.[2] However, the records sought are from patients who have no interest or involvement in this litigation. Information is sought from their records with no precise reason being given for the request. The Amentes do argue that a review of Dr. Newman's patients' files would let them see if there was a different form of treatment and delivery given to other obese patients and if they had children born without spinal injury as opposed to the one used on Bernadette Amente. In other words, these records would allow the Amentes to compare the method of delivery used by Dr. Newman on Bernadette Amente with the method used on his other obese patients. The Amentes also argue that discovery allows the search for relevant evidence and is extended by Rule 1.280(b)(1), Florida Rules of Civil Procedure.
Citing East Colonial Refuse Service, Inc. v. Velocci, 416 So.2d 1276 (Fla. 5th DCA 1982), the Amentes argue that "any information relevant to the subject matter of the case, or information reasonably calculated to lead to the discovery of information relevant to the subject matter of the case" should be allowed even though the information may not be introduced at trial. We agree with the principle, however, a closer reading of Veloci indicates that the court granted the writ and quashed the trial court's discovery order because the request sought irrelevant information and trade secrets of a corporation. The court further ruled that some information is not subject to discovery, even though relevant because it "may be privileged and therefore beyond permissible discovery." Id. at 1277-1278. So it is with the information sought in the case sub judice.
We hold that the trial court erred when it ordered Dr. Newman to produce records of patients not a party to this lawsuit without their permission. The error is not cured by having identifying information redacted from the patients' file. There are several reasons for our ruling.
First, section 455.241, Florida Statutes (1991)[3] requires that a patient's records be *308 kept confidential unless the patient signs a written authorization, unless they are needed for medical treatment, unless the patient brings a civil or criminal action against the treating physician or unless production is court ordered. Franklin v. Nationwide Mut. Fire Ins. Co., 566 So.2d 529 (Fla. 1st DCA), review dismissed, 574 So.2d 142 (Fla. 1990) (discusses the purpose of section 455.241, Florida Statutes and its implementation when medical records are sought). Also, the statute requires that the patients whose records are being sought to be disclosed must receive "proper notice" that their records are being sought. The records sought are not from litigants in this case and these patients have not brought any type of action against Dr. Newman. Nothing in the record before us indicates that the court, Dr. Newman or the Amentes gave notice to the patients that their records are being sought.[4] Because the statute was not complied with, the records cannot be released, even in redacted form.
Second, the Amentes have not shown that the patient records are relevant and that the relevancy outweighs the patients' statutory right to confidentiality of their medical files. Before a medical malpractice lawsuit can be filed, the plaintiff's attorney must make a "reasonable investigation ... to determine ... that there has been negligence in the care or treatment of the claimant." § 766.104(1), Fla. Stat. (1991). This belief can be based upon a written opinion of an expert who is a "similar health care provider" as the defendant/health care provider. §§ 766.104(1), 766.102(2), Fla. Stat. (1991). We assume, because we do not have a copy, that the complaint contains the sworn allegations of the Amentes' attorney. Because of the nature of the case, expert testimony will be required in court because the medical testimony will be outside the experience of the jurors. Charles W. Ehrhardt, Florida Evidence § 90.702 (1992 ed.). Since an expert will be needed to show that there is evidence of medical negligence by Dr. Newman, what then is the relevance of the information from the patient's records that cannot be gathered from other sources? If Dr. Newman has been sued by obese patients before, there is a record of the lawsuit in the public record in the jurisdiction where he has practiced. Dr. Newman has also given a sworn and unsworn statement concerning his delivery of children when the mother is obese, and any problems the children have experienced as a result of the delivery. The fact that Dr. Newman has delivered children of other obese women is not relevant to his delivery method of the Amente child. It is not relevant to show that he deviated from the applicable standard of care that is required by Dr. Newman. The applicable standard of care required is the standard observed by the medical community, not that of Dr. Newman alone. The question before the trial court will be whether he was negligent when he delivered the Amente child, not whether he was negligent in other cases with obese mothers. The Amentes present no compelling reason for the production of the confidential records of non-parties other than it may lead to relevant evidence. This allegation alone is not sufficient where the relevancy of the evidence the production may lead to is questionable at best, and is clearly outweighed by the patients' statutory right to confidentiality of their medical files.
Finally, the Florida legislature and the people of the state of Florida have agreed that the people of Florida have a constitutional right to be "free from governmental intrusion into [their] private life." Art. I, *309 § 23, Fla. Const.[5] This section of the constitution has codified the right of privacy and the right to be left alone. Nothing could be more intrusive than to have one's private medical files disclosed to the general public. The argument that redaction will protect the non-party patient is not practicable nor reasonable when compared with the invasion of a person's medical files. For example, even if the name and address of the patient is redacted, by observing the time and date the child was delivered along with the age and race of the parents, i.e., by use of the public record of the lawsuit, the parents' identity can be determined.
The patient file may have information that is embarrassing to the patient. Examples could be whether she is abused, whether she is sexually active with someone other than her husband, whether she has a husband, whether the child is her husband's child, whether she has ever used drugs, alcohol or controlled substances, whether she or her spouse has ever been treated for any sexually transmitted diseases. The list of information that is vital to a physician for proper care of his patient is endless. To redact all of the information that potentially could identify the patient or her spouse would effectively eviscerate the patients' records. The intricate and intimate details of the lives of patients should not be subject to public display and perhaps opprobrium simply because the Amentes want to look. The constitutional right to privacy and the right to be free from governmental intrusion means nothing if the private medical files of a patient cannot be kept, even in redacted form, from strangers. The harm could be irreparable.
We realize that there is a conflict among our sister courts on this issue. The Third District Court of Appeal has adopted the position that disclosure is inappropriate. North Miami Gen. Hosp., 397 So.2d 1033; Teperson v. Donato, 371 So.2d 703 (Fla. 3d DCA 1979); Peralta, 358 So.2d 232. The Second District Court of Appeal has followed the position of the Third District. Leikensohn v. Cornwell, 434 So.2d 1030 (Fla. 2d DCA 1983). The Fourth District Court of Appeal has a contrary view. In two recent cases, the Fourth District, without certifying conflict with the decisions of the Third and the Second Districts, has allowed patients' records to be produced as long as the patients' names were redacted. Amisub, Inc. v. Kemper, 543 So.2d 470 (Fla. 4th DCA 1989); Ventimiglia By and Through Ventimiglia v. Moffitt, 502 So.2d 14 (Fla. 4th DCA 1986).
We find the language of Peralta very persuasive:
to permit a party to inject into the public record medical information of a stranger to the suit, under the guise that it has a bearing on the competency of the doctor, would be unconscionable. The question in medical malpractice is whether or not the doctor, in treating the plaintiff, used a standard of care commensurate with that used in the community and that question can be answered by utilizing other methods of proof than the invasion into medical records of strangers.
358 So.2d at 223. We grant the writ and quash the order of the trial court. The case is remanded for further proceedings consistent with this opinion. We certify conflict with the decisions of the Fourth District Court of Appeal.
WRIT GRANTED; ORDER QUASHED; REMANDED.
HARRIS, C.J., concurs.
DAUKSCH, J., dissents without opinion.
NOTES
[1] Dr. Newman presented the trial court with a sworn affidavit in which he alleged:

3. My patient files are not indexed by weight, nor are they indexed by where the infant was delivered.
4. Many patient files for the period of time requested are in storage.
[2] § 455.241(2), Fla. Stat. (1991); Fla.R.Civ.P. 1.360.
[3] Section 455.241(2), Florida Statutes (1991) reads in pertinent part:

such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or [the patient's] legal representative or other health care providers involved in the care or treatment of the patient, except upon written authorization of the patient.... Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or his legal representative by the party seeking such records (emphasis supplied). Except in a medical negligence action when a health care provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given (emphasis supplied).
[4] We recognize that to give them notice is to interject them into the lawsuit and to name them as patients of Dr. Newman, but the statute requires "proper notice" as a requisite to disclosure even in redacted form.
[5] Section 23. Right to privacy.  Every natural person has the right to be let alone and free from governmental intrusion into [that person's] private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.